**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**TYRONE CRAIG,**

                              **Plaintiff,**

        **vs.**                                                    **1:15-cv-00664**
                                                                    **(MAD/DJS)**

**ERIC J. VANALLEN,** *et al.*,

                              **Defendants.**


_____

**APPEARANCES:**                                    **OF COUNSEL:**

**TYRONE CRAIG**
**12-A-4260**
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508
Plaintiff *pro se*

**MCCABE, MACK LAW FIRM**                 **DAVID L. POSNER, ESQ.**
P.O. Box 509
63 Washington Street
Poughkeepsie, New York 12602-0509
Attorney for Defendants Eric J. VanAllen,
Aaron Fitzgerald, and Brain Robertson

**COOK, TUCKER LAW FIRM**                 **MICHAEL T. COOK, ESQ.**
P.O. Box 3939
85 Main Street
Kingston, New York 12401
Attorney for Defendants Matthew Jankowski
and Dylan S. Gallagher


**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER


### I. INTRODUCTION

On or around May 26, 2015, *pro se* Plaintiff Tyrone Craig ("Plaintiff") commenced this action under 42 U.S.C. § 1983, alleging that Detectives Eric J. VanAllen, Aaron Fitzgerald, and Brian Robertson and Assistant District Attorneys Matthew Jankowski and Dylan S. Gallagher ("Defendants") violated his constitutional rights. *See generally* Dkt. No. 1; *see also* Dkt No. 7 at 4. Currently before the Court are Defendants' motions to dismiss.

## II. BACKGROUND

On or about June 1, 2012, Detectives VanAllen and Robertson organized a sting operation with Laurie Coddington whereby Laurie agreed to purchase Vicodin pills from her cousin Diesha Coddington,[1] Plaintiff's pregnant girlfriend. *See* Dkt. No. 1 at ¶ 6. At approximately 12:45 p.m., the two women met at Diesha's nearby hotel room, and the transaction took place. *See id.* at ¶ 7. During that time, Plaintiff was waiting for Diesha in a 1998 Chevy Tahoe, as Diesha had a doctor's appointment scheduled for 1:00 p.m. on that day. *See id.* at ¶ 8. The vehicle was pulled over almost immediately after they began their drive to the doctor's office. *See id.*

Plaintiff alleges that Defendant Robertson approached the car, "seized Diesha out of the passenger side[,]" and asked for the money he gave to Laurie to perform the sting. *Id.* at ¶ 9. Defendant Robertson then arrested Diesha "by cuffing her behind her back." *Id.* Next, Defendant VanAllen came over to Plaintiff's side, "searched and seized $2,216.00 out of his pocket," and arrested him for driving with a suspended license. *Id.* Plaintiff alleges that Defendant VanAllen then searched and seized the 1998 Chevy Tahoe before transporting Plaintiff to a holding cell. *See id.*

After Defendant VanAllen found drugs in Diesha's hotel room, Plaintiff was charged with

---

[1] Throughout the record, Diesha is referred to as both Diesha Coddington and Diesha Crockett. For the purposes of this motion, the Court assumes this to be the same individual.

two counts of criminal possession of a controlled substance, one count of criminally using drug paraphernalia, and one count of aggravated unlicensed operation of a motor vehicle. *See id.* at ¶ 11; Dkt. No. 31 at 79. Plaintiff claims Defendant VanAllen coerced him into pleading guilty to the charges by asserting that "the mother of his first unborn child will go to jail" if he were to plead not guilty. Dkt. No. 1 at ¶ 11.

Former Assistant District Attorney Dylan Gallagher sought to include a forfeiture of the $2,216.00 as part of Plaintiff's plea deal, but the presiding judge refused to accept that term or order forfeiture in that case. *See id.* at ¶ 12; Dkt. No. 22 at 2. As of the commencement date of this action, Plaintiff's money had not been returned. *See* Dkt. No. 1 at ¶ 12.

As part of Diesha's plea deal, she agreed to forfeit ownership of the 1998 Chevy Tahoe to the Ulster County District Attorney's Office. *See* Dkt. No. 26-1 at 15. In the agreement, Diesha stipulated that "the vehicle seized from her was her property, and that no one else, has any legitimate right, title or interest in said vehicle, superior to that of the Defendant." Dkt. No. 31 at 59. Plaintiff maintains that he is the true owner of the Chevy Tahoe, and that it was "just insured by Diesha for insurance purposes only." Dkt. No. 1 at ¶ 13. Plaintiff alleges that Defendant Jankowski "typed up false information . . . [and] coerced [Diesha] to sign to keep her freedom." *Id.* Plaintiff further alleges that Defendant VanAllen knew that the vehicle was not used in connection with the drug transaction, but ordered Defendant Jankowski to include the Tahoe as part of the plea deal because he did not want Diesha's 2011 Sonata. *See id.*

Pursuant to a New York State Supreme Court Decision and Order dated August 21, 2015, Plaintiff's $2,216.00 has since been returned. *See* Dkt. No. 22 at 1, 5. In a letter dated October 7, 2015, Plaintiff withdrew his initial request for relief with respect to the $2,216.00, but informed the Court that he would "still like to keep [Defendant Gallagher] in the complaint . . . for punitive

3

damages because he deliberately with held [sic] [Plaintiff's] funds violating [his] due process rights." *Id.* at 1.

### III. DISCUSSION

**A.      Standard of Review under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)**

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ." *Id.* (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all

reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not

extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although a court's review of a motion to dismiss is generally limited to the facts presented in the

pleading, the court may consider documents that are "integral" to that pleading, even if they are

neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v.

Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d

147, 152-53 (2d Cir. 2002)).

　　　To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

"plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).

Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims

across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

　　　Moreover, "in a *pro se* case, the court must view the submissions by a more lenient

standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F.

Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Plaintiff asserts six claims against Defendants: (1) Defendants VanAllen and Robertson seized the 1998 Chevy Tahoe without probable cause; (2) Defendants VanAllen and Jankowski coerced Diesha into signing a fraudulent waiver and plea agreement; (3) Defendants' seizure of the 1998 Chevy Tahoe violated Plaintiff's due process rights; (4) Defendants VanAllen and Robertson seized Plaintiff's $2,216.00 without probable cause; (5) Defendant Gallagher violated Plaintiff's due process rights by wrongfully withholding Plaintiff's $2,216.00 after the money was rejected from his plea deal; and (6) Defendant VanAllen coerced Plaintiff into pleading guilty to his drug charges. *See* Dkt. No. 1.

**B.      The 1998 Chevy Tahoe**

Liberally construed, Plaintiff asserts three claims related to the 1998 Chevy Tahoe he was driving at the time of his arrest. First, Plaintiff argues that Defendants seized the Tahoe without probable cause. *See* Dkt. No. 1 at 8. Second, Plaintiff challenges Diesha's forfeiture of the Tahoe on the grounds that the agreement was coerced. *See id.* Third, Plaintiff argues that the seizure of the Tahoe violated his due process rights. *See id.*

The ownership of the Tahoe is currently in dispute. Defendants argue that Diesha was the sole legal owner of the Tahoe at the time of the arrest and forfeiture. *See* Dkt. No. 23-6 at 7; Dkt. No. 26-1 at 8. Plaintiff maintains that he was the legal owner, and the vehicle was "just insured by Diesha for insurance purposes only." Dkt. No. 1 at 8. Defendants VanAllen, Robertson, and

Fitzgerald argue that Plaintiff lacks standing to challenge the initial seizure and subsequent

forfeiture of the Tahoe because he was not the legal owner. *See* Dkt. No. 23-6 at 6. Defendants

Gallagher and Jankowski argue that Plaintiff fails to state a due process violation because he had

an insufficient property interest in the vehicle. *See* Dkt. No. 26-1 at 8. The Court agrees with

Defendants.

### *1. Plaintiff's standing to challenge the seizure and forfeiture*

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and

'Controversies,' which restrict the authority of federal courts to resolving the legal rights of

litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, ___U.S.___, 133 S. Ct.

1523, 1528 (2013); *see also Valley Forge Christian Coll. v. Americans United for Separation of*

*Church and State, Inc.*, 454 U.S. 464, 471 (1982). "As an incident to the elaboration of this

bedrock requirement," a plaintiff seeking to maintain an action in federal court is "always

required" to have standing. *Valley Forge Christian College*, 454 U.S. at 471; *see also Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To demonstrate standing, a plaintiff must have

'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of

federal-court jurisdiction.'" *Salazar v. Buono*, 559 U.S. 700, 711 (2010) (quoting *Horne v.*

*Flores*, 557 U.S. 433, 445, 129 S. Ct. 2579, 174 L. Ed. 2d 406 (2009)) (emphasis omitted). To

that end, the issue of standing is "the threshold question in every federal case, determining the

power of the court to entertain the suit." *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 495 Fed.

Appx. 183, 188 (2d Cir. 2012).

As the Supreme Court established in *Lujan*, "the irreducible constitutional minimum of

standing contains three elements":

> First, the plaintiff must have suffered an injury in fact — an
> invasion of a legally protected interest which is (a) concrete and

> particularized and (b) actual or imminent, not conjectural or
> hypothetical. Second, there must be a causal connection between
> the injury and the conduct complained of — the injury has to be
> fairly traceable to the challenged action of the defendant, and not
> the result of the independent action of some third party not before
> the court. Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable
> decision.

*Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). The "[s]tanding doctrine

functions to ensure, among other things, that the scarce resources of the federal courts are devoted

to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v.

Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191 (2000); *see also Genesis

Healthcare Corp.*, 133 S. Ct. at 1528 ("This requirement ensures that the Federal Judiciary

confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the

resolutions of which have direct consequences on the parties involved"). In accordance with this

precept, a plaintiff must establish standing for each claim and form of relief sought. *See Carver v.

City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).

When a party challenges the plaintiff's standing at the pleading stage, the challenge may

be either facial or fact-based. *See Carter v. HaelthPort Technologies, LLC*, 822 F.3d 47, 56 (2d

Cir. 2016). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the

complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary

burden." *Id.* (citation omitted). "The task of the district court is to determine whether the

Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to

sue.'" *Id.* (quotation and other citation omitted). As such, the court must accept as true all

material factual allegations of the complaint and draw all reasonable inferences in favor of the

plaintiff. *See id.* at 56-57 (quotations and citations omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion,

proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57 (citations omitted). "In

opposition to such a motion, the plaintiffs will need to come forward with evidence of their own

to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . .

reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (citing *Exchange*

*National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)) (emphasis

omitted). "However, the plaintiffs are entitled to rely on the allegations in the Pleading if the

evidence proffered by the defendant is immaterial because it does not contradict plausible

allegations that are themselves sufficient to show standing." *Id.*

In the present matter, Defendants argue that this Court is without subject matter

jurisdiction because Plaintiff lacks standing to challenge the seizure and forfeiture of the 1998

Chevy Tahoe. *See* Dkt. No. 23-6 at 7. Specifically, they argue that Plaintiff lacks a sufficient

"personal stake in the outcome" of this claim because Diesha had the sole legal ownership interest

in the Tahoe at all relevant times. *See id.* at 6-7 (quoting *Baker v. Carr*, 369 U.S. 186, 204

(1962)). In support of their argument, Defendants attached to their motion the title of the Chevy

Tahoe, which is dated May 1, 2012, and lists Diesha N. Crockett as the sole owner. *See* Dkt. No.

23-4 at 2.

New York courts have routinely held that documents of title create a rebuttable

presumption of ownership in the person named in the certificate. *See Luperon v. North Jersey*

*Truck Center, Inc.*, No. 07 Civ. 9630, 2009 WL 1726340, *3 (S.D.N.Y. June 19, 2009) (citing

*Dorzas v. Island Insulation Corp.*, 254 A.D.2d 246, 247 (2d Dep't 1998)) (other citation omitted).

Accordingly, the New York State Certificate of Title bearing Diesha's name is controlling unless

Plaintiff's evidence rebuts the presumption created by the title.

In his response, Plaintiff again claims that he is "the rightful owner of the 1998 Chevy

Tahoe" and that he "purchased it from Nicolas M. Aurelia in Staten Island New York." Dkt. No. 31 at 2. In support his position, Plaintiff offers the affidavits of Naccarato Insurance Agent, "Debbie .R," and Diesha Coddington Crockett. *See* Dkt. No. 31 at 16, 18-19. After careful review, the Court finds that the affidavits are insufficient to rebut the presumption in this case. *See Aronov v. Bruins Transp., Inc.*, 294 A.D.2d 523 (2d Dep't 2002) (finding the written lease agreement between lessor and lessee sufficient to rebut the presumption); *see also Dorizas*, 254 A.D.2d at 247 (finding indication on the back of title certificate that ownership was transferred sufficient to rebut presumption).

As mentioned, Plaintiff submitted the "Affidavit of Debbie .R" in response. *See* Dkt. No. 31 at 16. This affidavit, which is not signed, not dated, and not notarized, fails to rebut the presumption. In the affidavit, this "Debbie .R" claims to be "Diesha Crockett coddington [sic] insurance agent[.]" *Id.* Thereafter, "Debbie .R" claims as follows: "On 4/06/2012 I received a phone call from Diesha in the early a.m. informing me that Mr. Tyrone Craig is on his way from the Bronx that he just brought [sic] a Chevy Tahoe Truck 1998 1GNEK13R3WJ371244 and he want to insure it under her name for insurance purposes only and that it is okay for me to do the paper work for him, and Diesha do have her own car as well under the same insurance plan a Sonata 2011." *Id.* Even assuming this seemingly forged document was actually drafted by, or at Debbie .R's instruction, it fails to create an issue of fact as to the ownership of the Tahoe. While Plaintiff may have had an ownership interest in the Tahoe as of April 6, 2012, this document fails to address the fact that the title dated May 1, 2012, lists Diesha as the sole owner of the vehicle.

Similarly, Diesha's affidavit explains that Plaintiff purchased the Chevy Tahoe and that on April 6, 2012 she instructed her insurance agent "Debbie .R" "to let Tyrone insure his truck in my

name for insurance purposes only[.]" Dkt. No. 31 at 18. Nothing in the affidavit explains why the

title dated May 1, 2012 provides Diesha as the sole owner of the vehicle. In addition, Diesha

stipulated in her settlement agreement that "the vehicle seized from her was her property, and that

no one else, has any legitimate right, title or interest in said vehicle superior to that of the

Defendant." Dkt. No. 31 at 59. Plaintiff's conclusory allegations regarding who insured the

vehicle are insufficient to rebut the presumption created by the title and Diesha's state-court

forfeiture agreement.

    Based on the foregoing, the Court finds that Plaintiff has failed to establish a sufficient

personal stake in the outcome of these claims and the Court is without subject matter jurisdiction

to adjudicate them. Accordingly, Plaintiff's claims that Defendants seized the Tahoe without

probable cause and coerced Diesha into forfeiting her ownership are dismissed.

## 2. Violation of due process

Plaintiff has also alleged a due process claim against Defendants VanAllen, Robertson,

and Jankowski in connection with the seizure of the Tahoe. *See* Dkt. No. 26-1 at 8; Dkt. No. 1 at

8. Although the Court finds that Diesha was the sole legal owner for purposes of this motion, that

finding does not necessarily foreclose Plaintiff's due process claim. *See Sommerville v. Wright*,

No. 12-CV-165, 2014 WL 794275, *6 (E.D.N.Y. Feb. 25, 2014) (holding that no formal title

ownership is necessary for the plaintiff to bring a due process claim where the individual has a

sufficient interest in the continued use and possession of the vehicle at the time of the seizure)

(citing *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999)). Nevertheless, the Court finds

that such a due process claim must fail because Plaintiff had adequate state-court remedies

available to him.

    The Stipulation and Assignment entered into by Diesha was pursuant to Article 13-A of

11

the New York Civil Practice Law & Rules. *See* Dkt. No. 31 at 64-66. Pursuant to the stipulation,

Diesha forfeited all interest in the vehicle to the Ulster County District Attorney's Office and

acknowledged that the District Attorney would prevail if forced to commence a forfeiture action

pursuant to Article 13-A. *See id.* at 65. Judge Lawrence Ball so ordered the stipulation on

September 11, 2012. *See id.* at 66. Pursuant to New York's forfeiture provisions, Plaintiff had

one year from the date of entry of the forfeiture judgment to assert his interest in the property.

*See* N.Y.C.P.L.R. § 1311(7). Since Plaintiff had an available state-court remedy, any due process

claim must fail.[2] *See Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468 U.S. 517,

534-35 (1983).

Accordingly, Plaintiff's claim that the seizure and forfeiture of the Tahoe violated his due

process rights is dismissed.

**C.     Plaintiff's $2,216.00**

Plaintiff initially claimed that Defendants VanAllen and Robertson seized Plaintiff's

$2,216.00 without probable cause, in violation of his Fourth and Fourteenth Amendment rights.

*See* Dkt. No. 1 at 8. In his October 7, 2015 status report, Plaintiff informed the Court that his

money had been returned. *See* Dkt. No. 22 at 1. Further, in the status report, Plaintiff indicates

that he still wishes to proceed with this claim as to Defendant "Gallagher for punitive damages

because he deliberately with held [sic] my funds violating my due process rights." *Id.*

"When alleging a due process violation based on the loss of personal property seized in

connection with an arrest, a plaintiff must demonstrate either that: (1) 'he was never given proper

---

[2] Even assuming that Plaintiff had successfully challenged the forfeiture, the end result would likely be the same because, had he proven an ownership interest in the Tahoe, it still would have been subject to the forfeiture provisions of Article 13-A since Plaintiff's own convictions have not been reversed.

notice' of the post-deprivation state law remedies or (2) 'the post-deprivation remedies available

under state law were inadequate.'" *Sommerville*, 2014 WL 794275, at \*4 (quoting *Kneitel v.*

*Danchuk*, No. 04-CV-0971, 2007 WL 2020183, \*4 (E.D.N.Y. July 6, 2007)). In the Second

Circuit, a property voucher must be given to an arrestee for non-contraband property seized that

includes notice of the procedures to be followed to recover such property. *See Butler v. Castro*,

896 F.2d 698, 702 (2d Cir. 1990). Thus, to succeed on a procedural due process claim, an

arrestee must demonstrate that: "(1) the City arrested him and seized his property; (2) it did not

give him a property voucher with the constitutionally-required notice printed on it; (3) it did not

otherwise notify him of the procedures he could follow to reclaim his property; and (4) he was

deprived of the property as a result." *Frith v. City of New York*, No. 07 Civ. 5899, 2011 WL

3477083, \*3 (S.D.N.Y. July 7, 2011).

In the present matter, the Court finds that this claim must be dismissed for several reasons.

First, Plaintiff failed to respond to this claim in his response to the motions to dismiss; and,

therefore, the claim is abandoned. Second, in his status report that was filed before the motions to

dismiss, Plaintiff indicated that he only wished to proceed with this claim as against Defendant

Gallagher. *See* Dkt. No. 22 at 1. As such, to the extent that Plaintiff did not implicitly abandon

this claim by failing to respond to Defendants motions to dismiss, he explicitly abandoned the

claim as to all Defendants except Gallagher. Third, Plaintiff's claim as to Defendant Gallagher

must be dismissed because a prosecutor's decision to institute and pursue forfeiture in connection

to a criminal prosecution is entitled to absolute prosecutorial immunity because, in doing so, they

are fulfilling a quasi-judicial prosecutorial function. *See Schrob v. Catterson*, 948 F.2d 1402,

1411-13 (3d Cir. 1991); *Banda v. Burlington County*, 263 Fed. Appx. 182, 183 (3d Cir. 2008);

*Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995). Finally, the claim fails on the merits

because, as indicated in the status report, Plaintiff was provided with and took advantage of the available state-court remedies.

Based on the foregoing, the Court grants Defendants' motions to dismiss as to Plaintiff's claims relating to the seizure of the $2,216.00.

**D.      Plaintiff's guilty plea**

Next, Plaintiff claims Defendant VanAllen coerced him into pleading guilty to the drug charges by asserting that "the mother of his first unborn child will go to jail" if he pleads not guilty.  Dkt. No. 1 at ¶ 11.  Defendants argue that this claim is subject to dismissal pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).  The Court agrees.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that,

> in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance
> of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-87.

Under *Heck* and its progeny, "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis omitted).  "If a plaintiff whose success would necessarily demonstrate the invalidity of the confinement or its duration does not satisfy *Heck*'s 'favorable termination' rule, he must seek relief through the federal habeas corpus statute rather than through § 1983."  *Caban v. Hendry*, No. 9:09-CV-1227, 2011 WL 2600620, *3

14

(N.D.N.Y. June 2, 2011) (citing *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir.2006)).

In the present matter, Defendants are correct that, to the extent that Plaintiff is asserting that his guilty plea was coerced, the claim is barred by *Heck* because Plaintiff's conviction has not been overturned on direct appeal or collateral review and a finding by this Court of coercion would necessarily call into question the validity of his conviction.

Based on the foregoing, the Court grants Defendants' motions to dismiss as to Plaintiff's third cause of action.[3]

**E.      Defendant Fitzgerald**

Lastly, Defendants argue that "[n]o factual allegations are made against Fitzgerald."  Dkt. No. 23-6 at 4.  The Second Circuit has consistently held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  In his complaint, the only allegations as to Defendant Fitzgerald identify him as a detective with the Kingston Police and the conclusory assertion that he illegally seized Plaintiff's funds with Defendants VanAllen and Robertson.  Such a conclusory allegation is clearly insufficient to plausibly allege that Defendant Fitzgerald engaged in any of the alleged unconstitutional conduct.

Based on the foregoing, the Court dismisses Defendant Fitzgerald from this action.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

---

[3] The Court notes that Plaintiff has filed a petition for writ of habeas corpus and claims in the petition that his plea was coerced. *See Craig v. Connolly*, No. 9:15-cv-00384, Dkt. No. 1 at 8 (N.D.N.Y.).

**ORDERS** that Defendants' motions to dismiss (Dkt. Nos. 23 & 26) are **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules and close this case.

**IT IS SO ORDERED.**

Dated: July 15, 2106
        Albany, New York

Mae A. D'Agostino
U.S. District Judge